USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/06/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
DREW DOSCHER,                                                           :
                                                                        :
                              Plaintiff,                                :     15-CV-384 (JMF)
                                                                        :
              -v-                                                       :     OPINION AND ORDER
                                                                        :
SEA PORT GROUP SECURITIES, LLC, et al.,                                 :
                                                                        :
                              Defendants.                               :
                                                                        :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Petitioner Drew Doscher brings this case against his former employers and colleagues, Respondents Sea Port Group Securities, LLC, Stephen Smith, Michael Meagher, Michael Meyer, The Seaport Group, LLC, Armory Advisers, LLC, Armory Fund, LP, and Seaport V, LLC, seeking to vacate in part and modify in part an arbitration decision by the Financial Industry Regulatory Authority ("FINRA"). Although the arbitrators awarded Doscher $2,289,774, he principally contends that a portion of the decision should be vacated based on their failure to enforce certain discovery-related orders. Secondarily, he asserts that another portion of the decision should be modified. For the reasons that follow, the Petition is denied in its entirety.

## BACKGROUND

From 2009 to 2013, Doscher worked for the Seaport Group, LLC and its broker-dealer, Sea Port Group Securities, LLC (together, "Seaport"), both of which are members of FINRA. (Docket No. 17 ("First Merolla Decl."), Ex. 27 at 12, 16; *see id.*, Ex. 2 ("Statement of Claim") ¶¶ 1-2). Doscher rose quickly to become co-head of sales and trading before he and Seaport severed ties in January 2013. (First Merolla Decl., Ex. 27, at 12, 16, 53; Ex. 30, at 825). About

five months later, Doscher commenced a FINRA arbitration against Seaport and the individual Respondents, who owned or worked at Seaport. (Docket No. 39 ("Resp'ts' 56.1 Statement") ¶ 1; Statement of Claim).[1] In his initial statement of claim, Doscher alleged, among other things, breach of contract, retaliatory discharge, and unjust enrichment. (Statement of Claim ¶¶ 40-51, 70-75). Thereafter, he filed an amended statement adding a claim for securities fraud under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq*., and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5. (Resp'ts' 56.1 Statement ¶ 4; First Merolla Decl., Ex. 5 ¶¶ 63-70). Doscher sought damages in excess of $15 million. (First Merolla Decl., Ex. 1 at 2). A panel (the "Panel") of three arbitrators — Chairperson Michele S. Riley (the "Panel Chair"), David J. Pine, and Robert Francis Littlejohn — was appointed, and proceedings began in November 2013. (First Merolla Decl., Ex. 23, at Ex. D).

In the course of the arbitration, Doscher sought extensive discovery, including Respondents' tax returns for multiple years, account ledgers and financial statements, Seaport Group operating agreements, and additional third-party documents. (Docket No. 34 ("Pet'r's 56.1 Statement") ¶ 6). Dissatisfied with Seaport's productions, Doscher filed various motions to compel and requests for depositions, non-party subpoenas, and other materials. (Docket No. 32 ("Pet'r's Mem.") 16-18). The Panel granted some of Doscher's requests and denied others. (*Id.* at 18-19). For example, in March 2014, following briefing and oral argument, the Panel issued an order that, among other things, denied without prejudice Doscher's requests for various

---

[1] Doscher and Seaport qualify as "Associated Persons"— that is, "person[s] . . . engaged in the investment banking or securities business who [are] directly or indirectly controlled by a FINRA member," *see* FINRA, *Dispute Resolution Glossary*, https://www.finra.org/arbitration-and-mediation/dispute-resolution-glossary — and disputes between them are thus subject to mandatory arbitration under FINRA's rules, *see* FINRA Rule 13200, *available at* http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4203.

depositions and non-party subpoenas. (First Merolla Decl., Ex. 15). Next, in late April 2014, Doscher filed a motion seeking the production of documents and depositions. (First Merolla Decl., Ex. 17). Doscher also asked the Panel to issue non-party subpoenas to Povol and Feldman, CPA, P.C., Global Relay USA, Inc., Bloomberg, Inc., Morrison Cohen, LLP, and Silverpoint Capital, LLC. (*Id.* at 3). Doscher's applications yielded an order requiring production of certain additional documents, but denying Doscher's request for depositions and non-party subpoenas. (First Merolla Decl., Ex. 21). And in May 2014, convinced that Respondents had impeded discovery through "obfuscat[ing] the exchange of information and ma[king] outright misrepresentations," (Pet'r's Mem. 1), Doscher again petitioned the Panel, this time to ask for a postponement of the arbitration hearing and to seek sanctions against Respondents for noncompliance in discovery. (First Merolla Decl., Ex. 22). Once again, Doscher sought a subpoena for non-party Povol & Feldman, CPA, P.C. (*Id.* at 6-7). Ultimately, the Panel granted Doscher's request to postpone the hearing, declined to impose sanctions or issue the third-party subpoena, and ordered further productions. (First Merolla Decl., Ex. 25).

Doscher also took steps outside of the arbitration proceedings to obtain certain materials. Most relevant for present purposes are materials that Doscher sought from an accounting firm, Sobel & Co., LLC ("Sobel"), that he and Respondent Meyer had retained in 2012 to examine Seaport's reporting and compliance. (First Merolla Decl., Ex. 208). After initiating the arbitration proceedings, Doscher's counsel, A. Todd Merolla, sought documents from Sobel by contacting McMillan, Constabile, Maker and Perone, LLP ("McMillan Constabile") — the counsel through whom Doscher and Meyer had retained Sobel — for its direction and consent. (Docket No. 36 ("Topper Decl."), Ex. 1, at 2). In response, McMillan Constabile informed Merolla that, should he want to obtain documents from Sobel, he should seek production through

3

the arbitral process; a Sobel representative added that "Sobel would turn over the requested documents under two conditions, a written release from the counsel who retained us *or a lawful subpoena*." (*Id.* at 1 (emphasis added)). Counsel for Seaport followed up with a letter to Sobel, also sent to Doscher's counsel, reiterating that Doscher should avail himself of FINRA's "process for non-party discovery." (Topper Decl., Ex. 2). Doscher, however, never asked the Panel to subpoena Sobel — at that point or any time thereafter.

In September 2014, the Panel held a nine-day hearing, during which eleven witnesses testified and over 200 exhibits were admitted. (Docket No. 72 ("Resp'ts' Supp. Mem.") 6; First Merolla Decl., Ex. 1; *see also* Docket No. 35 ("Resp'ts' Opp'n") 7). Just before summations, Doscher's counsel again broached the subject of sanctions, claiming that Respondents had violated the Panel's discovery orders by failing to produce, among other things, certain materials that had been disclosed to Sobel and the final versions of some tax returns. (First Merolla Decl., Ex. 35, at 2073-81). Among other things, he asked the Panel to "direct Mr. Meyer to . . . give his consent to Sobel" to release the documents that he sought. (*Id.* at 2092). Respondents once again raised the possibility of a subpoena to Sobel as an alternative path of obtaining the documents. (*Id.* at 2092-93). After an extended colloquy involving the Panel Chair and counsel for both sides regarding how to proceed and the prospects for delay if the proceedings were halted to pursue the materials from Sobel, Doscher's counsel requested a break to confer with Doscher himself. (*Id.* at 2092-121). A few minutes later, Doscher's counsel returned and expressly consented to proceeding with summations, noting that the Panel had "discretion" to address the issue of sanctions when ruling on the merits. (*Id.* at 2122-28). Counsel then proceeded to give their summations on the merits. (*Id.* at 2130-82).

4

Immediately after summations, the Panel Chair indicated that the arbitrators would deliberate and "issue an award" after receiving post-hearing briefs. (*Id.* at 2183). The following colloquy then took place:

> CHAIRPERSON RILEY: . . . I just want to ask to make sure that we have done our job as an arbitration panel. I would like you to state for the record whether or not you feel that you have had a full and fair opportunity to be heard, you and your client?
>
> MR. MEROLLA: I do. We do. Yes. We thank you for that.
>
> . . . .
>
> [RESPONDENTS' COUNSEL]: So do we, yes, on behalf of all the respondents. Thank you.

(*Id.* at 2183-84).

On October 22, 2014, the Panel issued its ruling (the "Award"). The Panel ruled in Doscher's favor, but granted him only $2,289,774, as well as a commission on a potential trade should that trade eventually settle. (First Merolla Decl., Ex. 1, at 3). At the same time, the Panel denied Respondents' counterclaim in its entirety. (*Id.*). Doscher subsequently commenced this case, seeking to vacate in part and modify in part the Award. (Docket No. 1 ("Petition")). In a Memorandum Opinion and Order entered on August 5, 2015, the Court followed then-binding Second Circuit precedent (while expressing doubt about the soundness of that precedent) to dismiss the Petition for lack of subject-matter jurisdiction. *See Doscher v. Sea Port Grp. Sec., LLC*, No. 15-CV-384 (JMF), 2015 WL 4643159 (S.D.N.Y. Aug. 5, 2015). On appeal, the Second Circuit overruled its prior precedent and held, on the basis of *Vaden v. Discover Bank*, 556 U.S. 49 (2009), that subject-matter jurisdiction over the case was proper. *See Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 389 (2d Cir. 2016). On remand, the parties submitted

5

supplemental briefing on the merits. (*See* Resp'ts' Supp. Mem.; Docket No. 73 ("Pet'r's Supp. Mem.")).

## DISCUSSION

It is well established that "[a]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008) (quoting *Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp.*, 103 F.3d 9, 12 (2d Cir. 1997)) (alteration in original). Among other things, the "party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)). Moreover, "[t]he arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co.*, 462 F.3d at 110 (internal quotation marks omitted); *see also Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 125 (2d Cir. 2011) (noting the "substantial deference . . . accorded to an arbitrator's decision that is rendered within the authority given her by the parties and under law" (internal quotation marks omitted)); *Southerndown, Inc. v. HSS LLC*, No. 11-CV-8619 (TPG), 2012 WL 265987, at *1 (S.D.N.Y. Jan. 27, 2012) ("[T]he court should defer to the arbitrator's decision so long as there is a barely colorable justification for it." (internal quotation marks omitted)).

In his Petition, Doscher asks the Court to vacate one portion of the Award (pertaining to his putative equity interest in Seaport) and to modify another (pertaining to his share of the commission for a particular trade). The Court will address request each in turn.

## A. Vacatur

Under Section 9 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, a reviewing court must confirm an arbitration award unless one of the statutory grounds for vacatur or modification is satisfied. *See* 9 U.S.C. § 9; *see also STMicroelectronics*, 648 F.3d at 74. Section 10(a) of the FAA, in turn, provides four instances in which a court may vacate an award. *See* 9 U.S.C. § 10(a). Significantly, Doscher here relies only on one provision of Section 10(a) — subsection (3) — which calls for vacatur "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). Section 10(a)(3) is an extension of the proposition that an arbitrator "must give each of the parties to the dispute an adequate opportunity to present its evidence and argument." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997). Notably, it "has been narrowly construed so as not to impinge on the broad discretion afforded arbitrators to decide what evidence should be presented." *Ripa v. Cathy Parker Mgmt., Inc.*, No. 98-CV-0577 (SAS), 1998 WL 241621, at *3 (S.D.N.Y. May 13, 1998). Among other things, for example, an arbitrator "need not follow all the niceties observed by the federal courts." *Id.* Ultimately, to warrant vacatur under Section 10(a)(3), any "misconduct must amount to a denial of fundamental fairness of the arbitration proceeding." *Fellus v. Sterne, Agee & Leach, Inc.*, 783 F. Supp. 2d 612, 618 (S.D.N.Y. 2011).

Applying those standards here, Doscher's arguments for vacatur under Section 10(a)(3) ring hollow. Doscher does not, and could not, argue that the Panel "refus[ed] to postpone the hearing" — because it did postpone the hearing, upon his request. 9 U.S.C. § 10(a)(3). Nor does he, or could he, contend that the Panel "refus[ed] to hear evidence pertinent and material to the

7

controversy" — because the Panel heard from all the witnesses that Doscher called and accepted all 130 exhibits that he offered. (*See* First Merolla Decl. 5-12; *id.*, Exs. 26-35, 37-201; *see also* Resp'ts' Mem. 7). Instead, he appears to rest his argument on the claim that the Panel engaged in "misbehavior by which" his right were "prejudiced" because it failed to mandate that Respondents produce certain documents, most notably final tax returns (as filed with the Internal Revenue Service) and materials in Sobel's possession. (Pet'r's Mem. 16-22, 24-25). But the arbitrators had "great latitude to determine the procedures governing their proceedings and to restrict or control evidentiary proceedings." *Supreme Oil Co. v. Abondolo*, 568 F. Supp. 2d 401, 408 (S.D.N.Y. 2008); *see, e.g.*, *Fairchild Corp. v. Alcoa, Inc.*, 510 F. Supp. 2d 280, 289 (S.D.N.Y. 2007) ("[A]n arbitrator has discretion to admit or reject evidence and determine what materials may be cumulative or irrelevant."). And considering the record as a whole, the Court cannot say that the Panel abused its "broad discretion" to manage discovery, *Finkelstein v. UBS Glob. Asset Mgmt. (US) Inc.*, No. 11-CV-0356 (GBD), 2011 WL 3586437, at *9 (S.D.N.Y. Aug. 9, 2011), let alone that it did so to a degree that was fundamentally unfair.

First, Doscher received ample discovery — including a single batch of more than 77,800 pages of documents. (Pet'r's 56.1 Statement ¶ 8). Notably, the exhibits introduced during the nine-day arbitration hearing alone included: twelve years of audits of Sea Port Group Securities, LLC; five years of tax returns and K-1 statements for the Seaport Group, LLC; a consolidated financial statement for the Seaport Group, LLC and subsidiaries; and other financial documentation. (*See* First Merolla Decl., Exs. 40-53, 169-80, 199). Second, the Panel entertained a slew of discovery motions filed by Doscher, granting some and denying others in a manner that suggests careful consideration. (*See* Pet'r's Mem. 16-19; First Merolla Decl., Exs. 15, 21, 25). Third, Doscher was given multiple opportunities to subpoena Sobel for the materials

he claims he needed, but he elected not to do so. (*See, e.g.*, First Merolla Decl., Exs. 17, 22 (requesting nonparty subpoenas for firms other than Sobel); *id.*, Ex. 35, at 2092-128).[2] And, finally, in an extended oral argument at the close of the case, Doscher's counsel presented to the Panel the very arguments Doscher raises now and — after consulting with Doscher himself — expressly advised the Panel that it had the discretion to proceed to a final decision and to issue whatever rulings it thought appropriate as to discovery and sanctions. (First Merolla Decl., Ex. 35, at 2073-2129). Given that record, it could be argued that Doscher waived the arguments that he presses here. *Cf. Roy v. Buffalo Philharmonic Orchestra Soc'y, Inc.*, 161 F. Supp. 3d 187, 195 (W.D.N.Y. 2016) (declining to vacate an award under Section 10(a)(3) where the petitioner "opted, as a matter of strategy," not to offer the testimony he alleged had been improperly excluded); *Kerr v. John Thomas Fin.*, No. 14-CV-9168 (KBF), 2015 WL 4393191, at *6 (S.D.N.Y. July 16, 2015) (stating that parties to an arbitration had "effectively waiv[ed]" any argument that they were denied the right call certain witnesses where they had the opportunity to call the witnesses "and explicitly chose not to"). At a minimum, however, it cannot be said that the Panel engaged in anything that could remotely be called a "denial of fundamental fairness." *Fellus*, 783 F. Supp. 2d at 618.

In the final analysis, Doscher's complaints smack more of litigator's remorse — the regret that comes when strategic decisions and arguments fail to produce the desired result —

---

[2] Notably, Doscher does not dispute that he was given multiple opportunities to subpoena Sobel for the materials and declined to do so. Instead, he contends that the law does not "require[] the doing of a futile act," citing *Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 216-17 (2d Cir. 2008), to suggest that a subpoena to Sobel would have been futile. (Docket No. 41 ("Pet'r's Reply"), at 3-4). But *Life Receivables* held only that "the FAA does not authorize arbitrators to compel *pre-hearing* document discovery from entities not party to the arbitration proceedings." 549 F.3d at 216-17 (emphasis added). The case confirms that arbitrators *can* compel document discovery from non-parties during a hearing. Accordingly, it would not have been futile for Doscher to subpoena Sobel for the materials during the hearing.

9

than legitimate gripes with the Panel's handling of the proceedings. On that score, it is particularly noteworthy that, when the case was submitted to the Panel, Doscher's counsel expressly conceded that he and his client felt they had "had a full and fair opportunity to be heard" and "thank[ed]" the Panel "for that." (First Merolla Decl., Ex. 35 at 2183-84). Doscher seeks to downplay the significance of that concession by asserting that "having an 'opportunity to be heard' on an issue or issues *ex ante* is not the equivalent of an admission that the end result *ex post* was without error." (Pet'r's Supp. Mem. 6). That may be so, but it merely underscores the point that Doscher seeks to second guess the substance of the Panel's decision on the merits rather than its handling of the process leading to that decision, which is the essence of a Section 10(a)(3) claim. That is, to the extent that the Panel committed the process fouls that Doscher now decries, those fouls would have been as apparent at the conclusion of the hearing as they are now. Thus, Doscher's concession from behind the proverbial veil of ignorance — that is, before he knew the outcome of the proceedings — that he was given "a full and fair opportunity to be heard" speaks volumes. *See, e.g.*, *Busch v. Sw. Sec., Inc.*, No. 09-CV-661-C, 2009 WL 3853208, at *2 (W.D. Okla. Nov. 17, 2009) (relying in part on the plaintiff's concession "at the end of the arbitration proceeding that he had a full and fair opportunity to be heard" in rejecting his arguments under Section 10(a)(3)); *Martin v. Scott & Stringfellow, Inc.*, No. 06-CV-207 (HEH), 2008 WL 706507, at *4 (E.D. Va. Mar. 14, 2008) (similar); *cf. Inficon, Inc. v. Veronix, Inc.*, No. 15-CV-8044, 2016 WL 1611379, at *6-7 (S.D.N.Y. Apr. 19, 2016) (denying a motion to vacate brought on the ground that the petitioner had been denied a fair redirect examination, where the

panel asked whether the attorneys had "anything to take up," counsel "offered nothing further," and the petitioner closed redirect with "I have no further questions").[3]

In any event, Doscher's Section 10(a)(3) argument falls short for another reason: He fails to establish the prejudice that Section 10(a)(3) requires. *See NYKCool A.B. v. Pac. Fruit, Inc.*, 507 F. App'x 83, 85 (2d Cir. 2013) (summary order); *Tempo Shain*, 120 F.3d at 19-20. Doscher's only specific claim of prejudice is that, as a result of Respondents' confusing and incomplete productions, he lacked suitable evidence to evaluate Seaport's profits or losses. (Pet'r's Mem. 22). But Doscher had a significant view into Seaport's financial situation given the exhibits admitted at the hearing and testimony concerning the materials that he alleges were withheld. And, in the colloquy that preceded closing arguments at the hearing, his counsel had a hard time articulating precisely why he needed the allegedly missing materials. (First Merolla Decl., Ex. 35, at 2092-129). Notably, Doscher all but gives up the game when he states in a supplemental brief that vacatur might not have been proper "had the arbitrators not ordered the production of the Sobel documents" from Respondent in the first place. (Pet'r's Supp. Mem. 3). If Doscher could not have argued prejudice had the Panel rejected his request from the get go, it is hard to see how he could argue prejudice from the Panel's alleged failure to follow through on its orders.

---

[3] Even here, the primary target of Doscher's vitriol is not the Panel, but Respondents — whom Doscher repeatedly accuses of "fraud" and "deceit." (*See, e.g.*, Pet'r's Mem. 1; *see also* Resp'ts' Mem. 21; Petition ¶¶ 26-40 (alleging abuse of the discovery process and misrepresentations to the Panel)). Section 10(a)(3), however, is focused on the conduct of arbitrators, not the conduct of the parties. Section 10(a)(1) allows a court to vacate an arbitration award on the ground that it was "procured by corruption, fraud, or undue means," 9 U.S.C. § 10(a)(1), but Doscher does not invoke that provision. Nor could he have, substantially for the reasons set forth in Respondents' memorandum of law. (Resp'ts' Mem. 21).

In short, in light of the broad discretion arbitrators enjoy to address discovery and other matters of procedure, Doscher fails to carry his heavy burden of showing that the Panel engaged in misconduct that denied him "fundamental fairness." *Fellus*, 783 F. Supp. 2d at 618. On that score, the primary cases upon which Doscher relies to argue otherwise — *Home Indemnity Co. v. Affiliated Food Distributors, Inc.*, No. 96-CV-9707 (RO), 1997 WL 773712 (S.D.N.Y. Dec. 12, 1997), *Cofinco, Inc. v. Bakrie & Bros.*, 395 F. Supp. 613, 615 (S.D.N.Y. 1975), and *Attia v. Audionamix, Inc.*, No. 14-CV-706 (RMB), 2015 WL 5580501 (S.D.N.Y. Sept. 21, 2015) (*see* Pet'r's Mem. 21-23; Pet'r's Supp. Mem. 1-2) — are easily distinguished. In each of those cases, the arbitrator either changed the rules midstream or erected seemingly arbitrary procedural barriers and the complaining party was prevented from presenting evidence that went to the heart of its case. *See Home Indem.*, 1997 WL 773712, at *3, 5 (concluding that the petitioner was denied a "fundamentally fair hearing" where the arbitrator "condition[ed]" discovery on the posting of security and thus prevented "discovery of files central and dispositive to the dispute" (alteration in original)); *Cofinco*, 395 F. Supp. at 614-15 (holding that "[t]he fundamental right to be heard was grossly and totally blocked" where the arbitrator ruled after adjourning the merits portion of the arbitration, depriving the petitioner of the opportunity to present any evidence); *Attia*, 2015 WL 5580501, at 7-9 (vacating a $9 million award where the arbitrator, without a hearing, granted a sanctions motion and struck the petitioner's affidavit, even though it "directly refuted" the spoliation claims). Here, the evidence at issue was not "central and dispositive to the dispute." *Home Indem.*, 1997 WL 773712, at *5. And the record reveals a Panel that strove

to give both sides a full and fair hearing rather than a Panel that deprived one side of the right to fundamental unfairness. Accordingly, Doscher's Section 10(a)(3) arguments fail.[4]

As something of a fallback, Doscher relies on case law holding that a court may vacate an award if the arbitrator "has acted in manifest disregard of the law." *Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC*, 497 F.3d 133, 139 (2d Cir. 2007); *see also Doscher*, 832 F.3d at 375 n.3 (noting that "manifest disregard of the law is a judicial gloss on § 10 that permits vacatur" (internal quotation marks omitted)). (Pet'r's Mem. 23). A party "seeking to vacate an award on the basis of the arbitrator's alleged 'manifest disregard' of the law bears a 'heavy burden.'" *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.,* 548 F.3d 85, 91, 93-95 (2d Cir. 2008) (quoting *GMS Grp., LLC v. Benderson,* 326 F.3d 75, 81 (2d Cir. 2003)), *rev'd on other grounds Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662 (2010). Among other things, the party must "prov[e] that the arbitrator[] [was] fully aware of the existence of a clearly defined governing legal principle, but refused to apply it." *Duferco Int'l Steel Trading v. T Klaveness Shipping A/S,* 333 F.3d 383, 389 (2d Cir. 2003). Doscher does not come close to meeting that stringent standard. Indeed, his "manifest disregard" argument is little more than a rehash of his

---

[4] Doscher renews his request, rejected several times by the Court earlier in the litigation (Docket Nos. 28, 79), for limited discovery in aid of his Section 10(a)(3) claim. (*See* Pet'r's Mem. 24; Docket No. 76). It is well established, however, that "discovery in a post-arbitration judicial proceeding to confirm or vacate . . . is available only in limited circumstances, where relevant and necessary to the determination of an issue raised by such an application." *Frere v. Orthofix, Inc.*, No. 99-CV-4049 (RMB) (MHD), 2000 WL 1789641, at *4 (S.D.N.Y. Dec. 6, 2000). Indeed, "in view of the narrowness of the grounds on which an arbitral award may be challenged, the need for discovery is typically not nearly as acute as in other civil lawsuits. Necessarily, then, the liberality that normally attends discovery in civil litigation is not appropriate in this context." *Id.* (citation omitted); *Lyeth v. Chrysler Corp.,* 929 F.2d 891, 898 (2d Cir. 1991) ("The district court has discretion to deny discovery in a proceeding to confirm an arbitral award."). Here, Doscher fails to establish that the discovery he seeks — most, if not all, of which he was given the opportunity to obtain during the arbitration proceedings — would be "relevant and necessary" to evaluate his claims of procedural error. Accordingly, the request is denied.

13

Section 10(a)(3) argument, with one additional gloss: the allegation that the Panel violated FINRA Rule 13505, which requires parties to "cooperate to the fullest extent practicable in the exchange of documents and information to expedite the arbitration." (Pet'r's Mem. at 6; *see also id.* at 23). By its terms, however, Rule 13505 imposes obligations on the *parties* to an arbitration; it is nonsensical, therefore, to assert that the *arbitrator* acted in manifest disregard of the Rule. More fundamentally, FINRA Rules "are not 'law.' [Doscher] must point to a statutory violation to warrant vacatur of an arbitral award, not a violation of the code of arbitration procedure." *Max Marx Color & Chem. Co. Emps.' Profit Sharing Plan v. Barnes*, 37 F. Supp. 2d 248, 253 (S.D.N.Y. 1999) (footnote omitted); *see also Pochat v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 12-CV-22397, 2013 WL 4496548, at *11 (S.D. Fla. Aug. 22, 2013) ("[T]he few courts to have considered such an argument have held that violations of FINRA procedural rules are not a valid basis for vacating an award." (citing cases)).

**B. Modification**

Doscher's final argument — that the Award with respect to a particular trade ("the Silverpoint portion of the Fairfield Sentry trade") should be modified, (Pet'r's Mem. 24) — can be swiftly rejected. Under Section 11(a) of the FAA, a court may modify an arbitration award upon "an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a). Modification, however, "is generally limited to patently obvious mistakes on the face of the award, such as where the award would provide for double recovery." *Fellus*, 783 F. Supp. 2d at 619. When an award is "not the result of some careless or obvious mathematical mistake, but rather the disposition of a substantive dispute that lay at the heart of the arbitration," modification pursuant to Section 11(a) is unavailable. *Companhia de Navegacao Maritima*

*Netumar v. Armada Parcel Serv., Ltd.*, No. 96-CV-6441 (PKL), 2000 WL 60200, at *6 (S.D.N.Y. Jan. 25, 2000); *see also, e.g.*, *Josephthal & Co. v. Cruttenden Roth Inc.*, 177 F. Supp. 2d 232, 238-39 (S.D.N.Y. 2001) ("The grounds to modify an award . . . are extremely limited."). Here, Doscher does not argue that there was mathematical error in the Panel's calculation of the Award; instead, he challenges the "eviden[tiary]" basis for one aspect of the Panel's decision. (Pet'r's Mem. 24; *see* First Merolla Decl., Ex. 28 at 470-75). That argument goes to the merits, and is not a proper basis for modification pursuant to Section 11(a). *See, e.g.*, *Aferiat v. Grossman*, No. 96-CV-1774 (JFK), 1998 WL 99797, at *10 (S.D.N.Y. Mar. 4, 1998).

## CONCLUSION

Significantly, the issue for this Court is not whether it would have handled the arbitration proceedings in the same way as the Panel or reached the same result that the Panel reached. Instead, the issue is a more limited one: whether, in light of the substantial deference owed to an arbitrator in handling procedural matters and rendering a decision on the merits, Doscher has established any of the limited grounds for vacating or modifying the Award. For the reasons explained above, the Court concludes that he has not. Accordingly, his petition to vacate or modify the Award is DENIED, and the Award is confirmed.

The Clerk of Court is directed to close the case.

SO ORDERED.

Date: December 6, 2017
New York, New York

JESSE M. FURMAN
United States District Judge

15